GRIFFITH R. JONES *et al.*, Plaintiffs-Appellees, v. UNKNOWN HEIRS OR LEGATEES OF MAYMEE C. FOX *et al.*, Defendants-Appellants.

Third District   No. 3—99—0512

Opinion filed April 28, 2000.

Robert M. McBride (argued), of Kehr, Cassidy & Mueller, P.C., of Chillicothe, for appellant.

Nathan R. Miller and Jeffrey A. Shuck (argued), both of Miller, Hall & Triggs, of Peoria, for appellees.

PRESIDING JUSTICE SLATER delivered the opinion of the court:
Plaintiffs Griffith Jones, Michael and Gary Lance, and Tami Dillon brought an action to quiet title to a 7½-acre parcel of land in Peoria County. A default judgment was subsequently entered in favor of plaintiffs on December 12, 1997. Appellant Wesley Fox (Fox), a purported heir of defendant Maymee Fox, filed a motion to vacate the judgment. The trial court denied the motion to vacate and also denied Fox's motion for reconsideration. We reverse and remand.

## Jurisdiction

Before we consider the merits of this appeal, we first address

plaintiffs' jurisdictional argument that Fox's appeal is untimely. Fox's motion to vacate the default judgment was brought pursuant to section 2—1301(g) of the Code of Civil Procedure (Code), which provides in part:

> "(g) If any final judgment is entered against any defendant who has been served by publication with notice of the commencement of the action and who has not been served with a copy of the complaint, or received the notice required to be sent him or her by mail, or otherwise brought into court, and such defendant or his or her heirs, legatees, or personal representatives, as the case may require, shall, within 90 days after notice in writing given him or her of the judgment, or *within 1 year after the judgment, if no notice has been given*, appear in open court and petition to be heard touching the matter of the judgment, the court shall upon notice being given to the parties to such action who appeared therein and the purchaser at a sale made pursuant to the judgment, or their attorneys, set the petition for hearing and may allow the parties and the purchaser to answer the petition. If upon the hearing it appears that the judgment ought not to have been made against the defendant, it may be set aside, altered or amended as appears just; otherwise the petition shall be dismissed at petitioner's costs." (Emphasis added.) 735 ILCS 5/2—1301(g) (West 1998).

Fox's motion alleged that he had not been given notice of the judgment, and it was filed on December 10, 1998, slightly less than one year after judgment had been entered. On January 28, 1999, the trial court ruled that Fox's motion was "deficient" and granted him leave to amend. The amended motion was filed on February 17, 1999, and it was dismissed by the court as insufficient on April 27. On May 25, Fox filed a motion to reconsider. That motion was denied on June 15. Fox filed a notice of appeal on June 25.

Plaintiffs assert that Fox was required to appeal within 30 days from the April 27, 1999, dismissal of his motion to vacate. Instead, Fox filed a motion to reconsider, which plaintiffs characterize as an impermissible second postjudgment motion. Therefore, plaintiffs maintain, the time to appeal expired on May 27, 1999. We disagree.

■ Supreme Court Rule 303(a)(2) provides that "[n]o request for reconsideration of a ruling on a post-judgment motion will toll the running of the time within which a notice of appeal must be filed." 155 Ill. 2d R. 303(a)(2). Consistent with this rule, our courts have repeatedly held that the filing of multiple postjudgment motions does not extend the time for filing an appeal. See, *e.g.*, *Sears v. Sears*, 85 Ill. 2d 253, 422 N.E.2d 610 (1981); *Deckard v. Joiner*, 44 Ill. 2d 412, 255 N.E.2d 900 (1970); *Department of Transportation v. Roodhouse*, 104 Ill. App. 3d 880, 433 N.E.2d 703 (1982); *Dulin, Thienpont, Potthast &*

*Snyder, Ltd. v. Packaging Personified, Inc.*, 89 Ill. App. 3d 647, 411 N.E.2d 1173 (1980).

On the other hand, where a party files a petition for relief from judgment more than 30 days after judgment has been entered, such a petition is considered to be a new proceeding, not a postjudgment motion. 735 ILCS 5/2—1401 (West 1998); *Burnicka v. Marquette National Bank*, 88 Ill. 2d 527, 431 N.E.2d 358 (1982). Accordingly, a motion to reconsider the denial of a section 2—1401 petition is not a second or successive postjudgment motion, and the time to appeal begins to run after the court rules on the motion to reconsider. *Burnicka*, 88 Ill. 2d 527, 431 N.E.2d 358; see *Northern Illinois Gas Co. v. Midwest Mole, Inc.*, 199 Ill. App. 3d 109, 556 N.E.2d 1276 (1990) (distinction between postjudgment *motion* and section 2—1401 *petition* is critical in determining whether successive attempt to vacate prior judgment is permissible).

■ In this case, Fox's motion to vacate was filed more than 30 days after judgment had been entered, but it was brought pursuant to section 2—1301(g), rather than section 2—1401. Plaintiffs argue that a motion under section 2—1301 should not be considered a new proceeding, but should be treated as a continuation of the original suit. Plaintiffs point out that section 2—1401 expressly provides that proceedings under that section are not a continuation of the original action, while section 2—1301 contains no such provision. The sections also contain different notice requirements.

Notwithstanding these differences, we believe that a petition filed pursuant to section 2—1301(g) constitutes a new action, rather than a continuation of the prior proceeding. The general rule is that a trial court loses jurisdiction over a case and has no authority to vacate or modify a final judgment once 30 days have elapsed, unless a timely postjudgment motion has been filed. *Beck v. Stepp*, 144 Ill. 2d 232, 579 N.E.2d 824 (1991); *Gegenhuber v. Hystopolis Production, Inc.*, 277 Ill. App. 3d 429, 660 N.E.2d 107 (1995); *Northern Illinois Gas*, 199 Ill. App. 3d 109, 526 N.E.2d 1276. A postjudgment motion must ordinarily be filed within 30 days of judgment. See 735 ILCS 5/2—1202 (West 1998) (motions in jury cases); 735 ILCS 5/2—1203 (West 1998) (motions in nonjury cases); 735 ILCS 5/2—1301(e) (West 1998) (motion to vacate default judgment). Since no postjudgment motion was filed in this case within 30 days, the trial court lost jurisdiction to vacate its judgment. Once jurisdiction had been lost, the only means of challenging the judgment was through a collateral attack, by filing a petition under section 2—1401 (see *Malone v. Cosentino*, 99 Ill. 2d 29, 457 N.E.2d 395 (1983) (petition under section 2—1401 is a collateral proceeding); *Burchett v. Goncher*, 235 Ill. App. 3d 1091, 603 N.E.2d 1

(1991) (same)) or by proceeding under section 2—1301(g) (see *People v. O'Keefe*, 18 Ill. 2d 386, 391, 164 N.E.2d 5, 9 (1960) ("Any petition to vacate an order, judgment, or decree, filed more than thirty days after the entry thereof, even though made to the court that rendered it, constitutes a collateral attack")). Therefore, a petition to vacate filed pursuant to section 2—1301(g) cannot be a "continuation" of a case over which the court has lost jurisdiction. It is instead a collateral attack on the judgment, an independent legal proceeding. Accordingly, when Fox's motion to vacate was dismissed on April 27, he had to either appeal from that order or file a postjudgment motion within 30 days. Fox filed a timely motion to reconsider on May 25. The trial court denied the motion on June 15, and Fox filed a timely notice of appeal on June 25. We find that we have jurisdiction over this appeal. We now consider whether the trial court erred in denying Fox's motion to vacate the default judgment.

## Facts

Plaintiffs' complaint, filed pursuant to section 13—110 of the Code (735 ILCS 5/13—110 (West 1996)), alleged that the subject property had been vacant and unoccupied for not less than seven years, that plaintiffs had paid the real estate taxes due on the property from 1977 through 1996, and that plaintiffs had taken possession of the property. Plaintiffs' interest in the property was derived from a quitclaim deed from Murl Jones dated June 13, 1977. Service on defendants was made by publication, based on plaintiffs' affidavit that defendants' names and residences could not be determined despite diligent inquiry. See 735 ILCS 5/2—206 (West 1996) (service by publication); 735 ILCS 5/2—413 (West 1996) (service on unknown parties). On December 12, 1997, with no defendants having appeared or answered the complaint, the trial court entered judgment in favor of the plaintiffs.

On December 10, 1998, Fox filed a motion to vacate pursuant to section 2—1301(g) of the Code (735 ILCS 5/2—1301(g) (West 1998)) alleging that he owned the subject property and had not received notice of the proceedings. Fox lives in Nebraska. Fox's interest in the property was derived from an "Affidavit of Title by Adverse Possession" filed by Fox's mother, Maymee Fox, on November 7, 1977. Fox alleged that his parents had paid taxes on the property for at least 46 years prior to the issuance of the 1977 quitclaim deed from Murl Jones to plaintiffs, and he believed he or his mother had paid taxes for at least one year thereafter. Fox also claimed that he and his father had placed a fence on the property line prior to November of 1977 which still borders the property. Fox further asserted that plaintiffs

had not been in possession of the property, as evidenced by an affidavit from an adjoining property owner, Judith Brossart, that there had been no activity on the property in 11½ years.

On April 27, 1999, the trial court dismissed Fox's motion to vacate, finding that Fox's "belief" that he or his mother had paid taxes after 1977 was insufficient to counter plaintiffs' allegation of having paid for seven years, that fencing the property was not sufficient to show possession by defendant, and that Brossart's affidavit was insufficient to show lack of possession by plaintiffs.

Fox filed a motion to reconsider which included a bookkeeping entry from Fox's personal records which purportedly showed that taxes had been paid on "15 acres" in Peoria, Illinois, for 1979-80. In denying the motion to reconsider, the trial court ruled that the bookkeeping entry was inadmissible hearsay evidence and was suspect because it did not specifically refer to the subject property, contained no other entries and was not supported by canceled checks or receipts. The court also found that the fence was "insufficient to show possession by [Fox] or anyone other than plaintiffs' predecessors in title." The court further stated that the Brossart affidavit, "while raising an issue of fact, is insufficient to prove by a preponderance a lack of possession by the plaintiffs." The court concluded that Fox's allegations and proof were insufficient to show a meritorious defense or to show that judgment ought not to have been made against Fox. On appeal, Fox contends that, in the interests of "substantial justice," the judgment should have been vacated. We agree.

## Analysis

Initially, we must determine whether a section 2—1301(g) motion to vacate should be evaluated under the liberal "substantial justice" standard applied to motions filed under section 2—1301(e), or the stricter requirements of section 2—1401 petitions. The requirements for obtaining relief more than 30 days after judgment under section 2—1401 of the Code are well established. A petitioner must set forth factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 499 N.E.2d 1381 (1986) (and cases cited therein). It is equally well established that a motion to vacate filed pursuant to section 2—1301(e) of the Code within 30 days of entry of a default judgment need not allege that the defendant had a meritorious defense or a reasonable excuse for failing to timely assert the defense. See *People ex rel. Reid v. Adkins*, 48 Ill. 2d 402, 270

N.E.2d 841 (1971); *Stotlar Drug Co. v. Marlow*, 239 Ill. App. 3d 726, 607 N.E.2d 346 (1993); *Campbell v. White*, 187 Ill. App. 3d 492, 543 N.E.2d 607 (1989). Instead, the overriding consideration is whether or not substantial justice is being done between the parties and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits. *Adkins*, 48 Ill. 2d 402, 270 N.E.2d 841. Among the factors to be considered are whether plaintiff is a resident of Illinois, the severity of the consequences to the defendant and the hardship on plaintiff if he is required to proceed to trial. The trial court's decision to grant or deny relief under section 2—1401 (*Smith*, 114 Ill. 2d 209, 499 N.E.2d 1381) or section 2—1301(e) (*In re Marriage of Ward*, 282 Ill. App. 3d 423, 668 N.E.2d 149 (1996); *Northern Trust Co. v. American National Bank & Trust Co.*, 265 Ill. App. 3d 406, 637 N.E.2d 658 (1994)) will not be disturbed absent an abuse of discretion. But see *Venzor v. Carmen's Pizza Corp.*, 235 Ill. App. 3d 1053, 602 N.E.2d 81 (1992) (analyzing cases and concluding that standard of review of section 2—1301(e) ruling is abuse of discretion *or* a denial of substantial justice).

■ What has not been well established are the requirements for obtaining relief under section 2—1301(g) of the Code. One could argue that the requirements of section 2—1401 should apply, since a petition under section 2—1301(g) may be filed more than 30 days after judgment and is the commencement of a new action. On the other hand, section 2—1301(g) appears to incorporate its own "due diligence" requirement by requiring a petitioner to file within 90 days after notice of the judgment or within one year if no notice has been given. This section also sets forth the standard to be applied for granting relief: "If *** it appears that the judgment ought not to have been made against the defendant, it may be set aside, altered or amended as appears just." 735 ILCS 5/2—1301(g) (West 1998). We believe that this language is more compatible with the substantial justice standard of section 2—1301(e) than with the requirements of section 2—1401. We recognize, however, that in evaluating whether substantial justice requires a judgment to be vacated, the defaulter's diligence and the presence or absence of a meritorious defense are relevant factors. See *Marriage of Ward*, 282 Ill. App. 3d 423, 668 N.E.2d 149; *Northern Trust*, 265 Ill. App. 3d 406, 637 N.E.2d 658; *Durham v. Rockford Mutual Insurance Co.*, 169 Ill. App. 3d 211, 523 N.E.2d 670 (1988).

■ Defendant maintains that he established the existence of a meritorious defense. We agree. Plaintiffs' complaint was filed pursuant to section 13—110 of the Code, which provides in part:

"§ 13—110. Vacant land—Payment of taxes with color of title. Whenever a person having color of title, made in good faith, to

vacant and unoccupied land, pays all taxes legally assessed thereon for 7 successive years, he or she shall be deemed and adjudged to be the legal owner of such vacant and unoccupied land, to the extent and according to the purport of his or her paper title." 735 ILCS 5/13—110 (West 1996).

By its terms, the statute requires plaintiffs to establish that the subject property is vacant and unoccupied, that they have color of title, and that they have paid all legally assessed taxes for seven successive years. In addition, by long-standing judicial construction, a person seeking to perfect title under section 13—110 must also take possession of the property. See *Slatin's Properties, Inc. v. Hassler*, 53 Ill. 2d 325, 291 N.E.2d 641 (1972); *Payne v. Williams*, 91 Ill. App. 3d 336, 414 N.E.2d 836 (1980); *Klingel v. Kehrer*, 81 Ill. App. 3d 431, 401 N.E.2d 560 (1980).

## Possession

Possession under section 13—110 "must be of such nature as to place others claiming title upon inquiry and to apprise the community or neighborhood that it is in the exclusive use and enjoyment of the person or persons so appropriating it." *Slatin's Properties*, 53 Ill. 2d at 331, 291 N.E.2d at 644. According to the affidavit of Judith Brossart, her residence adjoins the subject property and a person must pass over her property to reach the subject property. In 11½ years, Brossart was aware of only two occasions of persons entering onto the property. Fox entered the property in October of 1998, and two adult males had come onto the property five or six years earlier. To Brossart's knowledge, other than an existing fence, no other structures or improvements had been made, nor had there been any clearing of timber or similar activities on the property in 11½ years.

In our opinion, Brossart's affidavit raises significant questions concerning plaintiffs' claim that they have "taken and maintained possession" of the subject property. While it is true that Brossart may have been unaware of others entering the property, the apparent lack of activity and the infrequency of visitors are not consistent with possessing the property in a manner which places others on inquiry and apprises the neighborhood of plaintiffs' exclusive use. Indeed, the trial court's order recognizes that Brossart's affidavit raises an issue of fact, but then finds that it is insufficient to prove plaintiffs' lack of possession by a preponderance of the evidence. Evidently, the court was mistakenly requiring Fox to prove his case, when the issue was whether he should be given the *opportunity* to do so.

## Vacancy

Section 13—110 applies to land that is "vacant and unoccupied."

735 ILCS 5/13—110 (West 1996); *Wylie v. Fisher*, 337 Ill. 488, 169 N.E. 237 (1929). Here, the subject property was enclosed by a fence, which Fox alleged he and his father erected prior to November of 1977. "A fence is notice of actual occupancy \*\*\*." *Chicago Title & Trust Co. v. Darley*, 363 Ill. 197, 201, 1 N.E.2d 846, 848 (1936). The existence of the fence raises a factual issue concerning the applicability of section 13—110 and weighs in favor of granting the motion to vacate the judgment.

## Payment of Taxes

Fox asserted that he believed that he or his mother had paid taxes on the subject property for at least one year after 1977. Neither Fox's mere "belief" nor the unauthenticated bookkeeping entry he submitted are sufficient to disprove plaintiffs' claim of payment for seven successive years and therefore do not establish a meritorious defense. Nevertheless, such a payment by Fox *could* be a defense if it could be proved. Because a decision on a motion to vacate "must be made within the framework of the legal philosophy that litigation should be determined on its merits if possible and according to the substantive rights of the parties" (*Kirk v. Michael Reese Hospital & Medical Center*, 275 Ill. App. 3d 170, 174, 655 N.E.2d 933, 936 (1995)), we believe that even the possibility of a meritorious defense may weigh in favor of granting the motion.

## Other Factors

On the record before us, it does not appear that Fox exhibited a lack of diligence. He had no notice of plaintiffs' complaint, and he apparently filed his motion to vacate within a few months of discovering the judgment. In addition, plaintiffs are apparently residents of Illinois, and requiring them to proceed to trial would present no obvious hardship beyond those imposed on any party in a contested proceeding. If, on the other hand, the judgment is not vacated, Fox will lose title to land allegedly possessed by Fox and his predecessors since 1931 and for which they have purportedly assumed the tax burden for decades.

The overriding consideration is whether or not substantial justice is being done between the parties and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits. *Reid*, 48 Ill. 2d 402, 270 N.E.2d 841. Based on the factors discussed above, we believe that achieving substantial justice in this case requires granting Fox's motion to vacate the December 12, 1997, judgment in favor of plaintiffs. Accordingly, the judgment of the circuit

court dismissing Fox's motion to vacate is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

BRESLIN and HOLDRIDGE, JJ., concur.